IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD THOMAS KENNEDY
    Plaintiff

                                        Case No. _____

v.

COMMONWEALTH OF PENNSYLVANIA
    Defendant

Motion to Order Statute Void

    Plaintiff Edward Thomas Kennedy is one of the people of Pennsylvania in this court of record, filed and served a Notice on a Constitutional Question on the Defendant Commonwealth of Pennsylvania Attorney General.

    This Motion challenges the constitutionality of Pennsylvania Code, Title 18 - Crimes and Offenses, Chapter 27 - Assault, 2709 - Harassment. Said statute exceeds the Defendant's jurisdiction, and because it exceeds the government's jurisdiction, the Plaintiff (and other people) / are injured in loss of rights. Plaintiff moves the court to find that the statute violates the United States Constitution and is against the laws of the United States of America and common sense, and Order it void.

Date: September 7, 2018.

                                                        Respectfully submitted,

                                                        [signature] (seal)

1

Edward Thomas Kennedy
401 Tillage Road
Breinigsville, PA 18031
Email: pillar.of.peace.2012@gmail.com
Telephone: 415-275-1244.
fax: 570-609-1810.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD THOMAS KENNEDY
    Plaintiff,

Case No. _____

v.

COMMONWEALTH OF PENNSYLVANIA
    Defendant

In memory of William Penn

## MEMORANDUM

in Support of Motion to Order Statute Void

INTRODUCTION

    1.    The constitutionality of 2010 Pennsylvania Code, Title 18 - CRIMES AND OFFENSES, Chapter 27 - Assault , 2709 - Harassment, as written, defined and enforced, exceeds the Defendant's jurisdiction, and because it exceeds the defendant government's jurisdiction, the Plaintiff (and we the people) / are injured in loss of rights. Venue as defined in the said statute is also ambiguous and/or Prosecuting Attorneys employed by the defendant play games with justice by use of fear of prison in violation of rights, common law and common sense, and an insult to the memory of William Penn. There is no foundation in law for the state statute as written and enforced by the defendant.

FACTS

2. This is a court of record and this court of record has jurisdiction because this Notice, Motion and Memorandum are federal matter. Venue is proper for the Commonwealth of Pennsylvania lies within this court's territory. States vary in how they define criminal harassment, and how they enforce it. Rules of Discovery and how they are written and applied also vary among the several States.

3. Facebook, Twitter, Apple and Alphabet are U.S. corporations headquartered in the State of California and registered in the State of Delaware. These corporations and others changed the way we people communicate and express our freedoms and liberty. Today all communications on the internet are digital, use fiber optic transmissions, and are mostly stored on "the cloud," where the cloud is defined as worldwide, private computers and software.

4. Said "Harassment" statute as written, was written prior to the mass, introduction of technology, products and services from the above mentions corporations, and thus does not define said new ways of communication. This causes injury and loss of rights to the Plaintiff and other people.

5. In 1984, "communication" on voice telephone was done on the public switched network or private lines and was mostly analog, and not digital. A direct dialed phone call or fax from Allentown to Philadelphia traveled city to city, point to point and within the jurisdiction of the defendant and under Pennsylvania regulation. In 1984, approximately 95% of all telecommunications traffic was voice traffic and not data traffic.

6. In 2018, "communication" on internet, telephone and fax is digital and not analog, and these digits travel worldwide, outside of the jurisdiction of the Commonwealth of

Pennsylvania and outside of Pennsylvania regulation. For example, a fax sent today from Allentown to Philadelphia does not travel point to point and only within the jurisdiction of the defendant. Such a communication travels, for example, through the European Union or Switzerland, and is outside of the jurisdiction of defendant Commonwealth of Pennsylvania.[1] In 2018, the majority of telecommunications traffic is digital data and not analog voice, and the data communicates worldwide, and not just in the Commonwealth of Pennsylvania's jurisdiction.

7. The term and/or words "course of conduct" in said statute, are not included in Black's Law Dictionary, 9th edition and are not defined relative to the new technologies introduced by the modern telecommunications industry and said California based corporations in a way that complies with federal rules of evidence. For example, the phrase "Similar transmission" is ambiguous in 2018. Similar to what? Similar to carrier pigeons?

8. From the said defendant's statute as written:

(e.1) Course of conduct.--(Deleted by amendment).

(f) Definitions.--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

*"Communicates." Conveys a message without intent of legitimate communication or address by oral, non verbal, written or electronic means, including telephone, electronic mail, Internet, facsimile, telex, wireless communication or similar transmission.*[2]

*"Course of conduct." A pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. Acts indicating a course of conduct which occur in more than one jurisdiction may be used by any other*

---

[1] At times, this Plaintiff uses email on protonmail.com, and its servers are outside the Commonwealth of Pennsylvania, and email contents are not within defendant's jurisdiction.

[2] "Similar transmission" is not defined legally or technically by law, statute or telecommunications engineering.

*jurisdiction in which an act occurred as evidence of a
continuing pattern of conduct or a course of conduct.*

9. From the said statute as written:

(b.1) Venue.--

*(1) An offense committed under this section may be
deemed to have been committed at either the place at which
the communication or communications were made or at the place
where the communication or communications were received.*

*(2) Acts indicating a course of conduct which occur in
more than one jurisdiction may be used by any other
jurisdiction in which an act occurred as evidence of a
continuing pattern of conduct or a course of conduct.*

10. GRADING as written in the said statute is incomprehensible, and lacks common sense, and states the following charges: (c) Grading.-(1) An offense under subsection (a)(1), (2) or (3) shall constitute a summary offense (2) (i) An offense under subsection (a)(4), (5), (6) (7) shall constitute a misdemeanor of the third degree.

(ii) (Deleted by amendment).

LAW OF THE CASE

11. The Magna Carta of 1215 and "The rules of legal interpretation are rules of COMMON SENSE, adopted by the courts in the construction of the laws. The true test, therefore, of a just application of them is its conformity to the source from which they are derived. This being the case, let me ask if it is consistent with common-sense to suppose that a provision obliging the legislative power to commit the trial of criminal causes to juries, is a privation of its right to authorize or permit that mode of trial in other cases? Is it natural to suppose, that a command to do one thing is a prohibition to the doing of another, which there

was a previous power to do, and which is not incompatible with the thing commanded to be done? If such a supposition would be unnatural and unreasonable, it cannot be rational to maintain that an injunction of the trial by jury in certain cases is an interdiction of it in others."[3]

PENNSYLVANIA HISTORY

(the source from which they are derived)

12. In 1681 King Charles II of England gave the Pennsylvania region to William Penn. Pennsylvania means Penn's Woods. Penn, a Quaker, established the Pennsylvania colony so that Quakers and other faiths could have freedom.

13. Penn became an active promoter of Quaker ideas by writing numerous pamphlets. After he wrote "The Sandy Foundation Shaken" to refute the doctrines of the trinity and the eternal damnation of souls, he was put in prison again, not for his ideas but because he had no license from the bishop of London. Penn wrote "Innocency with her Open Face" and was released. Also while in the Tower of London he wrote his most famous book, No Cross, No Crown.

14. In 1670 Penn and William Meade were arrested in Gracechurch Street, London, for preaching. The recently passed Conventicle Act forbade gatherings for worship of more than five people, apart from for services of the Church of England.

15. In the trial Penn and Meade appeared before twelve judges and twelve jurors.

16. Penn challenged the legality of indictment and he would not plead without

---

[3] Publius, also known as Alexander Hamilton, July 1788, The Federalist Papers : No. 83, link here:
http://avalon.law.yale.edu/18th_century/fed83.asp

seeing a written copy; since this was not given, he pleaded not guilty.

17. Penn wrote a further pamphlet with an appendix citing numerous precedents since the Magna Carta of 1215.

18. This Penn-Meade trial became famous and showed that the arbitrary and oppressive proceedings of the courts badly needed reform. It is a precedent to this day.

19. The Trial of William Penn (1670)[4] Summary

a. Penn was a leader of the Quakers in London. The sect was not recognized by the government and was forbidden to meet in any building for the purpose of worship. In 1670 William Penn held a worship service in a quiet street which was attended by a peaceful group of fellow Quakers. Penn and another Quaker, William Mead, were arrested on a charge of disturbing the King's peace and summoned to stand trial. As the two men entered the courtroom, a bailiff ordered them to place their hats, which they had removed, back on their heads. When they complied, they were called forward and held in contempt of court for being in the courtroom with their hats on.

b. Penn demanded to know under which law they were charged. The court refused to supply that information and instead referred vaguely to the common law. When Penn protested that he was entitled to a specific indictment, he was removed from the presence of the judge and jury and confined in an enclosed corner of the room known as the bale-dock. From there, he could neither confront the witnesses who accused him of preaching to the Quakers nor ask them questions about their charges against him.

c. Several witnesses testified that Penn had preached to a gathering which included Mead, but one showed some hesitancy as to whether Mead had been present. The judge turned to Mead and questioned him directly. In essence, he was asking Mead if he were guilty. Mead invoked the common-law privilege against self-incrimination which provoked hostile comment from the judge. The court then sent Mead to join Penn in the bale-dock out of the sight of the jury and witnesses. After the testimony the court instructed the jury to find the defendants guilty as charged. Penn tried to protest, but was silenced and again sent out of the courtroom.

---

[4] The Trial of William Penn and William Mead, at the Old Bailey, for a Tumultuous Assembly: 22 Charles II. A. D. 1670. [Written by themselves.]

      d.      The jury, for its part, proved sympathetic to the two defendants, and refused the judge's command to find the defendants guilty. The judge was furious and sent them away to reconsider. When they returned with the same verdict, the court criticized the jury's leader, one Bushnell, and demanded "a verdict that the court will accept, and you shall be locked up without meat, drink, fire, and tobacco....We will have a verdict by the help of God or you will starve for it."

      e.      Three more times the jury went out and returned with the same verdict. Finally, they refused to go out any more. The judge fined each of them forty marks and ordered them imprisoned until the fine was paid. Penn and Mead went to prison anyway for obeying the bailiff's order that they put on their hats. Later a writ of habeas corpus won freedom for the jurors while Penn and Mead left jail to come to America.

      f.      Penn's demand to know under which law he was charged

23.      Transcript from the Trial of William Penn[5]

Penn: I desire you would let me know by what law it is you prosecute me, and upon what law you ground my indictment.

Rec.: Upon the common-law.

<u>Penn: Where is that common-law?</u>

Rec.: You must not think that I am able to run up so many years, and over so many adjudged cases, which we call common-law, to answer your curiosity.

Penn: This answer I am sure is very short of my question, for if it be common, it should not be so hard to produce.

Rec.: The question is, whether you are Guilty of this Indictment?

Penn: The question is not, whether I am Guilty of this Indictment, but whether this Indictment be legal. It is too general and imperfect an answer, to say it is the common-law, unless we knew both where and what it is. For where there is no law, there is no transgression; and that law which is not in being, is so far from being common, that it is no law at all.

---

[5]For more of this transcript, see also https://constitution.org/trials/penn/penn-mead.htm, From: *Howell's State Trials*, Vol. 6, Page 951 (6 How. 951).

Rec.: You are an impertinent fellow, will you teach the court what law is? It is "Lex non scripta," that which many have studied 30 or 40 years to know, and would you have me tell you in a moment?

Penn: Certainly, if the common-law be so hard to understand it is far from being common.

Source: Trial of William Penn. 6 How. St. Trials (1670) 951, 958.

24. Plaintiff's Motion is based on common law and common sense and the wishes of William Penn, the founder of Pennsylvania.

WHEREFORE, Plaintiff requests a Judge assigned to this case in this court of record who is learned in law, culture and true history, and who honors his oath of office and his fiduciary to the Plaintiff and the people of Pennsylvania, grant Plaintiff's Motion to Order said State Statute Void without delay.

Date: September 7, 2018

Respectfully submitted,

*(signature)* /seal/

Edward Thomas Kennedy
401 Tillage Road
Breinigsville, Pennsylvania 18031
Email: pillar.of.peace.2012@gmail.com
Telephone: 415-275-1244.